IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JAYME ELISE POLLOCK § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:20-CV-01032-P |
| § | |
| § | |
| COMMISSIONER, SOCIAL SECURITY § | |
| ADMINISTRATION § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

Plaintiff Jayme Elsie Pollock ("Pollock") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). Pollock protectively filed her application in March 2018, alleging that her disability began on March 10, 2017. (Transcript ("Tr.") 10; *see* Tr. 182–85.) After her application was denied initially and on reconsideration, Pollock requested a hearing before an administrative law judge ("ALJ"). (Tr. 10; *see* Tr. 73-107, 123-25.) The ALJ held a hearing on October 29, 2019 and issued a decision on December 11, 2019 denying Pollock's applications for benefits. (Tr. 10-23, 31-67.) On July 14,

2020, the Appeals Council denied Pollock's request for review, leaving the ALJ's December 11, 2019, decision as the final decision of the Commissioner in Pollock's case. (Tr. 1–6.) Pollock subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and, thus, entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). "Substantial gainful activity" is defined as work activity involving the use of significant and productive physical or mental abilities for pay or profit. *See id.* § 404.1510. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* § 404.1520(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. § 404.1520(a)(4)(iii), (d).[1] Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. § 404.1520(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 404.1520(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 404.1520(a)(4)(iv). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 404.1520(a)(4)(v).

relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* § 404.1520(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that she cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In her brief, Pollock presents the following issues:[2]

1. Whether the ALJ's Step Two determination is erroneous because: (a) it is based on extra-record evidence; (b) the ALJ used the wrong severity standard; and (c) substantial evidence does not support the ALJ's determination;

2. Whether the ALJ's residual functional capacity determination is erroneous because the ALJ failed to include any mental impairment limitations in such determination; and

3. Whether the ALJ erred in providing no analysis of Plaintiff's subjective complaints.

(Plaintiff's Brief ("Pl.'s Br.") at 1, 10-21.)

### IV. ALJ DECISION

In his December 11, 2019, decision, the ALJ found at Step One that Pollock had not engaged in substantial gainful activity since March 10, 2017, the alleged onset date of disability, and that she continued to meet the insured status requirements of the SSA through the date of the ALJ's decision. (Tr. 10.) At Step Two, the ALJ concluded that Pollock had the following severe impairments: "degenerative joint disease with a history of right knee replacement, degenerative disk disease of the cervical and lumbar spine, migraines, and obesity." (Tr. 10-11.) Further, the ALJ found that Pollock's diagnosed depression and anxiety/panic disorder were not severe impairments. (Tr. 16.) At Step Three, the ALJ found that Pollock did not suffer from an impairment or combination of impairments that met or equaled the severity of any impairment in the Listing. (Tr. 11, 16-18.)

At Step Four, as to Pollock's RFC, the ALJ stated:

The claimant has retained the residual functional capacity to perform, on a continuing and sustained basis, the external and nonexternal requirements of sedentary work activity as follows: which occasionally entails climbing ramps and stairs; which never entails climbing ladders, ropes or scaffolds; which occasionally entails balancing, stooping,

---

[2] While Pollock asserts in her brief two main issues, Pollock actually raises multiple issues. Thus, for clarity and ease of understanding, the Court has divided Pollock's arguments into multiple issues.

kneeling and crawling; and which entails using a cane to walk long distances or on uneven terrain. . . .

. . . .

After thorough review of the evidence in its entirety, I conclude that the objective evidence fails to establish that the claimant has any significant restrictions in her residual functional capacity to perform work consistent with the above definition and limitations, despite her subjective complaints. In so finding, I have carefully considered the claimant's complaints of chronic back, neck and knee pain, as well as the likely exacerbation of her back and knee pain due to her obesity, and I have therefore limited her to sitting for 6 hours and to standing/walking for 2 hours in an 8-hour workday, to lifting/carrying up to 10 pounds occasionally and less than that frequently, to never climbing ladders, ropes, or scaffolds, and to occasionally climbing ramps and stairs, balancing, stooping, kneeling, and crawling. . . . [T]he claimant must use a cane to walk long distances or to walk on uneven terrain. However, I find that the objective clinical evidence fails to establish that the claimant has any additional functional limitations as a result of her medically determinable impairments.

(Tr. 20-21.)

Based upon this RFC assessment and the testimony of a vocational expert ("VE"), the ALJ concluded that Pollock was able to perform her past relevant work as a school secretary and a secretary. (Tr. 22.) Consequently, the ALJ found that Pollock was not disabled. (Tr. 23.)

## V. DISCUSSION

### A. Step Two Determination Regarding Mental Impairments

#### 1. Extra-Record Evidence and Lay Opinion

In her brief, Pollock alleges that as to Pollock's mental impairments, the ALJ, at Step Two, substituted his medical judgment, based on extra-record evidence, for the opinions of the medical professionals in the record. (Pl.'s Br. at 11-12.) In support, Pollock shows the similarity of part of the ALJ's analysis regarding the severity of Pollock's diagnosed depression, anxiety, and panic disorder to the medical criteria for each in the Diagnostic and Statistical Manual of Mental

Disorders.[3] (*Id.*) Pollock argues that, instead of following the opinions of the medical providers in the record, the ALJ "chang[ed] a few words around to avoid detection, and ma[de] his own diagnoses." (Pl.'s Br. at 12.) Further, Pollock claims that the alleged use of the DSM-V by the ALJ is in violation of the Hearings, Appeals, and Litigation Law Manuel ("HALLEX") and contributed to "reversible lay speculation." (Pl.'s Br. at 14.) Specifically, Pollock citing to *Baker v. Barnhart*, No. 02 C 3195, 2003 WL 21058544, at *5 (N.D. Ill. May 8, 2003), states:

> [A]n ALJ used extra-record evidence in order to resolve the severity of a claimant's pain and her credibility. The court noted the HALLEX manual, which stated "[t]he ALJ must not cite medical texts and medical publications as the authority for resolving any issue. If it is necessary to refer to a medical text or medical publication, the ALJ must submit the material to the claimant or the representative for review and comment, and make the material part of the record." The Court noted that this ALJ used the medical dictionary for more than "a mere definition," as contrary to the HALLEX provisions. Here, the ALJ's Step [Two] determination was based on his lay reading of the DSM-V and impermissible medical diagnoses.

(Pl.'s Br. at 14 (footnotes omitted) (citations omitted).)

The Commissioner, in her brief, responds that "the ALJ did not even cite to the DSM-V, much less use the DSM-V as the authority for resolving the issue." (Defendant's Brief ("Def.'s Br.") at 4.) Further, the Commissioner asserts that "[w]hat Plaintiff characterizes as [the ALJ] substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine [Pollock's] capacity for work." (Def.'s Br. at 4 (citing *Taylor v. Astrue*, 706 F.3d 600, 602-603 (5th Cir. 2012)).

---

[3] *See* Am. Psychiatric Ass'n: Diagnostic and Statistical Manual of Mental Disorders (5th Ed. 2013) ("DSM-V").

In this case, the ALJ began his Step Two severity analysis of Pollock's mental impairments by recognizing that Pollock had diagnosable mental impairments. (Tr. 11-16.) The ALJ then, *inter alia*, stated the diagnostic criteria for each of Pollock's diagnosed mental impairments.[4] (Tr. 16-17.) This listing of diagnostic criteria is the basis for which Pollock asserts that the ALJ came to a lay diagnosis based upon extra-record evidence. (Pl.'s Br. 12-14.)

After reviewing the language in the DSM-V and the language used by the ALJ, the Court agrees that the language used by the ALJ in analyzing Pollock's mental impairments is noticeably similar to the language used in the DSM-V.[5] However, the Court disagrees with Pollock that the

---

[4] The ALJ stated, in part:

> I also conclude that the claimant's diagnosed depression, anxiety/panic disorder and alcohol use disorder are not "severe" impairments within the meaning of the Act. There is no documentation that she has demonstrated sustained clinical signs of 5 of the following symptoms of depression: a depressed mood; a diminished interest in almost all activities; an appetite disturbance with a change of weight; sleep disturbance; observable psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; or thoughts of death or suicide. Similarly, there is no evidence that she has demonstrated sustained clinical signs of 3 of the following symptoms of anxiety: restlessness; easy fatigue; difficulty concentrating; irritability; muscle tension; or sleep disturbance. Further, the evidence fails to establish that the claimant has demonstrated clinically observed panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences, or disproportionate fear or anxiety about at least 2 different situations.

(Tr. 16-17.)

[5] The DSM-V sets forth the criteria for Major Depressive Episode as follows:

A. Five (or more) of the following symptoms . . . .
. . . .
   1. Depressed mood most of the day . . . .
   2. Markedly diminished interest or pleasure in all, or almost all, activities most of the day, nearly every day . . . .
   3. Significant weight loss when not dieting or weight gain . . . .
   4. Insomnia or hypersomnia nearly every day.
   5. Psychomotor agitation or retardation nearly every day . . . .
   6. Fatigue or loss of energy nearly every day.
   7. Feelings of worthlessness or excessive or inappropriate guilt . . . .
   8. Diminished ability to think or concentrate, or indecisiveness . . . .
   9. Recurrent thoughts of death (not just fear of dying), recurrent suicidal ideation . . . .

DSM-V 161. In addition, the DSM-V sets forth the criteria for Generalized Anxiety Disorder, as relevant here, as follows:

use of such led the ALJ to substitute his own lay diagnosis for the medical opinion evidence in the record. Similar to the Fifth Circuit in *Frank v. Barnhart*, this Court declines to reach a conclusion on whether the ALJ's alleged use of the DSM-V was for more than a "mere definition," because, "even if the ALJ made an error, the error would be harmless." *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir.1988) (applying harmless error analysis in disability benefits context)). While included in the ALJ's severity analysis, the section at issue does little if anything to affect the ALJ's assessment. Immediately after setting forth the diagnostic criteria, the ALJ properly evaluates the severity of Pollock's mental impairments using the established "Paragraph B" criteria, as is discussed below. (Tr. 17.) Further, despite Pollock's assertions, at no point does the ALJ overrule the medical findings that Pollock's mental impairments exist. Rather, the ALJ finds that the diagnosed impairments do not rise to the required level to be classified as "severe" at Step Two. The ALJ's analysis and determination would remain the same even if the section at issue was removed from the opinion. Accordingly, there is no harm because the ALJ did not use the DSM-V as the authority for resolving the issue of severity at Step Two. While the Court would caution the ALJ to avoid

---

The anxiety and worry are associated with three (or more) of the following six symptoms . . . .

1. Restlessness or feeling keyed up or on edge.
2. Being easily fatigued.
3. Difficulty concentrating or mind going blank.
4. Irritability.
5. Muscle tension.
6. Sleep disturbance . . . .

DSM-V 222.

similar actions in the future, in this case, the ALJ's alleged use of the DSM-V does not constitute a harmful error. Thus, remand is not required as to this issue.

### 2. Step Two Standard

In her brief, Pollock next argues that "[t]he ALJ clearly applied the incorrect standard" at Step Two when evaluating the effect of Pollock's impairments on Pollock's ability to work. (Pl.'s Br. at 15.) At Step Two, the ALJ is to determine whether any of the claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *cf. id.* § 404.1522(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.") The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1104-05. Instead, the Fifth Circuit held in *Stone v. Heckler* that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 752 F.2d at 1101. Stated differently, "an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). Under *Stone*, courts within the Fifth Circuit "assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to [*Stone*], or by an express statement that" the ALJ used the construction the Fifth Circuit gives to the severity requirement.

9

752 F.2d at 1106; *Salmond*, 892 F.3d at 817 (reiterating the severity standard set forth in *Stone* as "binding precedent" (quoting *Loza,* 219 F.3d at 391). However, "[a] case will not be remanded simply because the ALJ did not used the 'magic words.'" *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986).

In this case, the ALJ did not reference *Stone* in his decision. Instead, he referenced and quoted Social Security Regulation ("SSR") 85-28, which clarifies the SSA's process for determining non-severe impairments and states that "[a]n impairment or combination of impairments" as "not severe" if "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." 1985 WL 56856, at *3 (S.S.A. 1985). (*See* Tr. 11, 16-17.) Thus, the issue becomes whether the ALJ's quotation and reference to SSR 85-28 for the Step Two severity standard without referencing the severity standard in *Stone* constitutes error.

In *Keel v. Saul*, 986 F.3d 551 (5th Cir. 2021), the Fifth Circuit recently addressed whether an ALJ's reference to SSR 85-28 satisfies the severity standard announced in *Stone*. In this case, the Fifth Circuit concluded that "*Stone* and SSR 85-28 are not substantially different enough to warrant a finding of error" and "[r]emand is only appropriate where there is no indication that the ALJ applied the correct standard." *Id.* at 556. Accordingly, in this case, the ALJ's citation to SSR 85-28, rather than *Stone*, is not reversible error and remand is not required. *See, e.g.*, *Dailey v. Saul*, No. SA-19-CV-1429-JKP, 2021 WL 778025, at *3 (W.D. Tex. Mar. 1, 2021).

### 3. Substantial Evidence at Step Two

Pollock also argues that "the ALJ's Step [Two] determination is unsupported by substantial evidence," because the ALJ's findings of "mild limitations in each [Paragraph B] domain" are

10

"contrary to the medical evidence of record." *Id.* (emphasis omitted). In support, Pollock, *inter alia*, states:

> Plaintiff [was] constantly treated for her depression and anxiety throughout the relevant period. As early as February of 2017, Plaintiff was reporting anxiety, problems interacting with past co-workers, and exhibiting anxious moods. [Nurse Practitioner ("NP")] Perry noted that Plaintiff's anxiety has caused her a rash, observed her to be visibly nervous and anxious, and indicated that her mood was agitated, anxious, and tearful. Dr. Hughes and NP Perry continued to note anxious moods throughout treatment, even on consultations for unrelated matters. A few months later, NP Perry described Plaintiff as agitated, anxious, hostile, manic, and tearful, noting she was argumentative, had notable psychomotor agitation, and would avoid eye contact. Dr. Haque noted that Plaintiff had improved somewhat by June of 2017, but at this point of improvement she was still having around two panic attacks per day. She exhibited signs of anxiety including an anxious mood and ruminating thought patterns. She continued to display some improvement with medications but still evidenced anxious and ruminating thought patterns.
>
> In 2018, Dr. Hughes noted continued and severe anxiety symptoms, with an anxious mood present upon exam. Plaintiff also underwent an Agency sponsored consultative examination which provided diagnose [sic] including "panic disorder," major depressive disorder, and alcohol use disorder, should there be any question to the ALJ's diagnoses earlier. That Agency examination also found significant findings related to these conditions. For example, Dr. Jensen noted Plaintiff's report of significant difficulty maintaining focus and sustaining attention to complete tasks "was supported by mental status findings regarding immediate and recent recall as well as concentration." Dr. Jensen noted a tearful mood, and diminished concentration upon testing. Serial seven calculations were only 60 percent accurate. Although Dr. Jensen made no opinion as to functional limitations, his examination and findings surely support a "severe" impairment under the Act. State agency consultants also reviewed this examination and found that Plaintiff's limitations were "severe," although the ALJ discounts them with the statement that her records "clearly show" that she has "a euthymic mood with no limitations." It is unclear what records the ALJ is referring to here, as all of her psychiatry records show notable mood deficits. In any event, Plaintiff continued to seek treatment for her depression.

(Pl.'s Br. at 15-17 (internal citations omitted).)

As stated above, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe at Step Two: An impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be

expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101. In addition, federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. § 404.1520a. In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. § 404.1520a(b)(1). For most mental impairment Listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A and B or A and C of the adult mental disorders contained in the Listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(2) & (c). "Paragraph B" contains four broad functional areas: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself.[6] 20 C.F.R. § 404.1520a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E. The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 404.1520a(d). If the ALJ rates the degree of the claimant's limitation as "none" or "mild" the ALJ "will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates

---

[6] These four functional areas are known as the paragraph "B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1 §§ 12.00A.2.b, 12.00E. The degree of limitation is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). Extreme "represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.*

12

that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder of the Listing. 20 C.F.R. §§ 404.1520a(d)(2). To determine if it meets or is equivalent in severity to a listed mental disorder, the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. § 404.1520a(d)(3).

In this case, as set forth above, the ALJ found that Pollock had several severe impairments but that her mental impairments were not severe. (Tr. 17.) In making this finding, the ALJ stated:

> I also conclude that the claimant's diagnosed depression, anxiety/panic disorder and alcohol use disorder are not "severe" impairments within the meaning of the Act. . . .
>
> I further conclude that the record fails to establish that the claimant has demonstrated more than mild sustained functional limitations in her ability to understand, remember or apply information, in her ability to interact with others, in her ability to concentrate, persist or maintain pace, or in her ability to adapt or manage herself. In addition, there is no indication that depression is a "serious and persistent" disorder—that is, there is no medical documentation over a period of at least 2 years with evidence of both treatment, psychosocial support or a highly structured setting <u>combined with</u> "marginal adjustment" (as indicated by the absence of any report that she has minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life). Despite her subjective complaints of depression and anxiety with panic attacks, her treatment records and the consultative psychological evaluation establish that those conditions have such minimal effect on the claimant that they would not be expected to interfere with her ability to work, regardless of her age and educational/vocational background. I therefore find that depression and anxiety/panic disorder are not "severe" impairments under the provisions of §§ 12.04 and 12.06, respectively, of the Listing.

(Tr. 16-17 (internal citations omitted).)

13

After reviewing the parties' arguments and the ALJ decision, the Court agrees with Pollock that the ALJ's decision at Step Two as to Pollock's mental impairments is not supported by substantial evidence. As noted by Pollock, there is evidence that Pollock has a history of anxiety and depression and has continually received treatment for such impairments. (*See, e.g.,* Tr. 11-16.) While the "mere presence or diagnosis of some impairment is not disabling per se," the evidence in this case indicates that Pollock has satisfied the *de minimis* standard at Step Two of having an impairment that, at the very least, would be expected to minimally interfere with her ability to work. *See Hames v. Heckler,* 707 F.2d 162, 165 (5th Cir. 1983). While it is true, as noted by the ALJ, there were some times in which Pollock demonstrated a normal mood, affect, and/or behavior, there were also many times, as noted by Pollock, that Pollock was anxious, suffering from panic attacks, and prescribed medications for her mental impairments. (Tr. 11-19.) In addition, the medical records indicate that as of February 2019, Pollock "began receiving psychotherapy for a diagnosed adjustment disorder with anxiety." (Tr. 15.) Moreover, the Court notes that the State Agency Medical Opinions, which appear to be the only opinions in the record giving an actual opinion on whether Pollock's mental impairments are severe as that term is defined in the Act, found that such impairments were severe. (*See* Tr. 78, 97.)

As set forth above, the record is replete with evidence indicating that Pollock's mental impairments are severe at Step Two, and the only opinions in the record regarding severity at Step Two indicate that Pollock's mental impairments were severe.[7] While the Court is not suggesting that Pollock will ultimately be successful in her quest for DIB, the ALJ erred in not finding at Step

---

[7] The Court notes that "Courts within this district have found no legal error where an ALJ does not include mental limitations in a claimant's RFC so long as the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis, even those impairments that are non-severe." *Martha L. v. Saul,* No. 1:20-CV-00003-H-BU, 2021 WL 3610316, at *5 (N.D. Tex. July 27, 2021). In this case, however, the ALJ did not adequately consider the limiting effects and restrictions of Pollock's mental impairments in the RFC analysis. Thus, remand is required.

14

Two that Pollock had severe mental impairments and completing the five-step process in terms of such mental impairments. Consequently, remand is required.

## B. Inclusion of Mental Limitations in the RFC Determination

In this case, Pollock also argues that, even though the ALJ found Pollock did not have a severe mental impairment at Step Two, the ALJ erred when he failed to include mental limitations in the RFC by "reject[ing] the functional limitations given by the State Agency consultants, such that there is no reliance." (Pl.'s Br. at 19). Further, Pollock asserts that even when an impairment is found to not be severe, "[t]he ALJ . . . [i]s required to include limitations in the RFC for such impairments, or alternatively, explain why these impairments were excluded from such." (Plaintiff's Reply ("Pl.'s Reply") at 3.)

Because the Court is remanding the case for the ALJ to reconsider its decision at Step Two regarding the severity of Pollock's mental impairments, the ALJ should reconsider his RFC determination as well and either include limitations in the RFC determination for such impairments or explain why such impairments are excluded from the RFC determination. *See, e.g., Martha L.*, 2021 WL 3610316, at *4 ("Even when an ALJ finds that a claimant's mental impairments are non-severe, the ALJ must still consider the impact of any non-severe impairments—either singly or in combination with other conditions—when he determines his RFC.") (internal quotations omitted).

## C. Subjective Complaints

Finally, Pollock argues that the ALJ erred in evaluating Pollock's subjective complaints because the ALJ simply listed the seven factors prescribed by the regulation but did not actually evaluate the factors by comparing them with Plaintiff's statements. (Pl.'s Br. at 19-21; Pl.'s Reply at 3.) In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the claimant's

15

pain or other symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3P, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). Once the impairment is found, the ALJ evaluates the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to perform work-related activities. 20 C.F.R. § 404.1529(c); SSR 16-3P, 2017 WL 5180304, at *3. When assessing a claimant's subjective complaints, the ALJ considers, in addition to all the other evidence, the following: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and 7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3P, 2017 WL 5180304, at *7-8.

As to Pollock's argument that the ALJ failed to properly analyze the seven factors in evaluating Pollock's subjective complaints, the Court disagrees. The ALJ began his analysis of Pollock's subjective complaints by stating that Pollock "has underlying medically determinable impairments which could reasonably cause some of the symptoms alleged; however, her subjective complaints about the intensity, persistence and limiting effects of her symptoms are not completely consistent with the objective clinical evidence and other evidence." (Tr. 18.) Then, the ALJ set forth the claimant's allegations and testimony and noted that the evidence included a written form submitted from Pollock's husband. (Tr. 18.) Next, the ALJ turned to evaluating the seven factors as set forth in 20 C.F.R. § 404.1529(c)(3). (Tr. 19.)

As to factor one, the ALJ specifically set forth the daily activities that Pollock asserted that she could perform, which included caring for her own personal needs, preparing simple meals, doing laundry, vacuuming, cleaning, sweeping, mopping, doing dishes, driving, shopping, handling financial matters, watching television, doing crafts, talking on the phone, going out to eat lunch with friends, sewing, and watching her grandson. (Tr. 19.) As to factor two, the ALJ noted that Pollock had "complaints of back and widespread joint pain, migraines, sleep apnea, tremors, memory and concentration deficits, and anxiety with panic attacks." (Tr. 19.) As to factor three, the ALJ stated that most forms of activity "allegedly aggregate physical symptoms, while situational factors including pain and stress reportedly exacerbate psychiatric symptoms." (*Id.*)

As to factor four, the ALJ listed the type, dosage, effectiveness, and side effects of Pollock's medications, stating:

> [A]s of October 2019, the record reflects active prescriptions for Xanax 0.5 mg to be taken twice daily as needed, Advair Diskus 250/50 mcg/dose to be used 1 puff twice daily, Lasix 20 mg to be taken once daily, Neurontin 300 mg to be taken once at bedtime, Norco 10/325 mg to be taken once every 8 hours, Xopenex HFA inhaler 45 mcg/actuation to be used 2 puffs every 8 hours as needed, Toprol XL 50 mg to be taken once daily, Provigil 200 mg to be taken once every morning, Singular 10 mg to be taken once daily, Pamelor 10 mg to be taken once at bedtime, Oxycontin 20 mg to be taken every 12 hours, Protonix 40 mg to be taken once daily, Maxalt MLT 10 mg to be taken twice daily as needed, Trazodone 50 mg to be taken once at bedtime as needed, Effexor XR 150 mg to be taken once everymorning, and Verapamil SR 240 mg to be taken once daily, although the claimant was taking it 180 mg every morning: medications reportedly effective when taken as prescribed with repeated reports to clinical sources that she has <u>no</u> unresolved side effects."

(Tr. 19.) As to factor five, the ALJ stated that Pollock had a "history of right knee replacement surgery, psychotherapeutic counseling, gynecologic surgery, multiple knee and back injections, and physical therapy." (*Id.*) As to factor six, the ALJ looked at the other measures taken by Pollock to relieve pain or other symptoms, which included activity avoidance, and using a cane to ambulate long distances. *Id.* As to factor seven, the ALJ indicated that there were no other factors

17

concerning functional limitations and restrictions due to pain or other symptoms. Based on the foregoing, it is clear that the ALJ did properly consider the seven factors in evaluating Pollock's subjective complaints. Thus, the ALJ did not err, and remand is not required as to this issue.

## RECOMMENDATION

It is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further administrative proceedings consistent with these proposed findings of fact and conclusions of law.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **October 4, 2021**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be file within seven (7) days of the filing date of objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket for the United States District Judge.

SIGNED September 20, 2021.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE